UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHRISTINA SANFELIZ,

                                     Plaintiff,

    - against -

LT. CHRISTOPHER WILLIAMS, *et al.*,

                                 Defendants.
----------------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-8914 (CS)

Appearances:

Michael H. Sussman
Sussman & Associates
Goshen, New York
*Counsel for Plaintiff*

Michael J. Keane
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendants*

Seibel, J.

    Before the Court is Defendants' motion for summary judgment.  (ECF No. 72.)  For the

following reasons, the motion is GRANTED.

I.      **BACKGROUND**

    A.    **Facts**

    The following facts are based on Defendants' Local Civil Rule ("LR") 56.1 Statement,

(ECF No. 80 ("Ds' 56.1 Stmt.")), Plaintiff's responsive LR 56.1 Statement, (ECF No. 87 ("P's

56.1 Resp.")), and the supporting exhibits, and are undisputed except as noted.[1]

---

[1] Plaintiff's LR 56.1 Response includes a 147-paragraph "Counterstatement" of facts that
Plaintiff finds helpful but does not contend are in dispute, in violation of LR 56.1, which permits

Plaintiff Christina Sanfeliz, who is a Hispanic female, was employed by the New York State Division of State Police (the "NYSP") from 2007 until 2024.  (Ds' 56.1 Stmt. ¶¶ 1-2.)  In 2014, Plaintiff was promoted from Trooper to Investigator in the NYSP Bureau of Criminal Investigations ("BCI"), where she was assigned to Troop F.  (*Id.* ¶ 4; ECF No. 85-6 ("P's Depo.")

---

only a counterstatement of "additional material facts as to which it is contended that there exists a genuine issue to be tried."  LR 56.1(b).  "There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important; any additional facts should be confined to material facts in dispute." *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175, 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020); *see Allen v. Koenigsmann*, No. 23-CV-5651, 2024 WL 403113, at *3 (S.D.N.Y. Feb. 2, 2024).  (Unless otherwise indicated, all case quotations omit internal citations, quotation marks, alterations and footnotes.)  I therefore disregard most of Plaintiff's Counterstatement, and consider only the facts therein that the parties genuinely dispute.

Further, some of Plaintiff's responses to Defendants' 56.1 Statements improperly interject argument or add facts, (*e.g.*, P's 56.1 Resp. ¶¶ 9, 31-32, 34), and I therefore disregard these responses, *see Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012) (improper to "interject[ ] arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts"); *Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding responses that "do not specifically dispute Defendants' statements or consist of conclusory allegations, speculation or conjecture" ).  And some responses contain purported denials that do not actually deny or refute the specific facts asserted by Plaintiff, but instead quibble with Defendants' phraseology.  (*See, e.g.*, P's 56.1 Resp. ¶¶ 56-57, 66 (purporting to "deny as stated" Defendants' assertions and reframing the fact in language more favorable to Plaintiff).)  In these instances, the Court will deem Defendants' facts admitted where the record evidence supports Defendants' contentions.  *See Warren v. Ewanciw*, No. 15-CV-8423, 2019 WL 589488, at *2 n.4 (S.D.N.Y. Feb. 13, 2019).

Given that Plaintiff's counsel has been repeatedly reprimanded for filing 56.1 statements containing defects mirroring those identified here, both by the undersigned, *see, e.g.*, *Allen v. Padilla*, No. 22-CV-9523, 2025 WL 587085, at *1 n.1 (S.D.N.Y. Feb. 24, 2025); *Giurca v. Good Samaritan Hosp.*, No. 19-CV-7761, 2023 WL 254611, at *1 n.1 (S.D.N.Y. Jan. 18, 2023), *aff'd sub nom. Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 302384 (2d Cir. Jan. 26, 2024) (summary order), *amended*, 2024 WL 763388 (2d Cir. Feb. 26, 2024) (summary order), and other courts in this district, *see. e.g.*, *Dale v. Suffern Cent. Sch. Dist.*, No. 18-CV-4432, 2023 WL 6386808, at *1 (S.D.N.Y. Sept. 28, 2023); *Olivier v. County of Rockland*, No. 15-CV-8337, 2019 WL 2502349, at *3 n.7 (S.D.N.Y. June 17, 2019); *see also Risco*, 868 F. Supp. 2d at 85 n.2 ("As noted, this is not the first time a member of this Court has had to take the extraordinary step of admonishing Plaintiff's counsel concerning his obligations to follow the Local and Individual Rules of this Court.") (collecting cases), his continued improper filings invite sanctions in the future.

at 12:23-25; ECF No. 79-2 ("P's Personnel Record").)  Across the various teams within Troop F, there are ninety-eight Investigators, who are supervised by twenty-two Senior Investigators.  (Ds' 56.1 Stmt. ¶ 15.)

In April 2019, Plaintiff was transferred within Troop F from her previous team, SP Liberty, to the Violent Gang and Narcotics Enforcement Team ("VGNET").  (*Id.* ¶ 5; P's Personnel Record at 1.)[2]  During Plaintiff's time in VGNET, the team employed three Senior Investigators and between ten and twelve Investigators.  (Ds' 56.1 Stmt. ¶ 16.)  Plaintiff was supervised by several Senior Investigators during her time in VGNET, including James Montross, Charles Kelly, Timothy Dymond, Christopher Fox and Sue Buckley.  (*Id.* ¶ 41.) Plaintiff did not name any of these individuals as Defendants in this action, stating that "none of these people were decision-makers or could influence in the promotion process or decision." (ECF No. 86 ("P's Decl.") ¶ 5; Ds' 56.1 Stmt. ¶¶ 41-42; P's 56.1 Resp. ¶ 42.)  The VGNET Senior Investigators report to the Troop F BCI Lieutenant, who reports to the Troop F BCI Captain.  (Ds' 56.1 ¶ 14.)

Each Defendant was Plaintiff's superior in Troop F at some point during the relevant period.  (*Id.* ¶ 17.)[3]  Defendant Brian Webster was BCI Captain from September 2019 until October 2021.  (*Id.* ¶ 18.)  In November 2021, Defendant Joseph Kolek succeeded Webster.  (*Id.* ¶ 22; P's 56.1 Resp. ¶ 23; ECF No. 88 ("Kolek Decl.") ¶¶ 9-10.)[4]  Defendant James Browne was

---

[2] Excluding deposition transcripts, which are cited according to the page numbers on the transcript, all citations to exhibits refer to page numbers generated by the Court's Electronic Case Filing ("ECF") system.

[3] "Plaintiff challenges promotions which were made between February 4, 2021 . . . and July 7, 2022 . . . ."  (ECF No. 84 ("P's Opp.") at 18.)

[4] Kolek was a Lieutenant before becoming Captain, but was not the Lieutenant in charge of VGNET.  (ECF No. 85-1 ("Kolek Depo.") at 14:10-18.)

BCI Lieutenant in Troop F from September 2019 until November 2021.  (Ds' 56.1 Stmt. ¶ 20.) Defendant Christopher Williams, after working as an Investigator in the Community Stabilization Unit ("CSU") within Troop F, was promoted in February 2021 to Acting Senior Investigator in VGNET, after being recommended by Defendant William Young, who was Williams's Senior Investigator in the CSU.  (Ds' 56.1 Stmt. ¶ 32; ECF No. 90 ("Williams Decl.") ¶¶ 5-6.)  In his role of Acting Senior Investigator of VGNET, Williams was in a supervisory position over Sanfeliz, but she worked more closely with Senior Investigator Chris Fox.  (Ds' 56.1 Stmt. ¶ 34; ECF No. 85-2 ("Williams Depo.") at 59:19-60:5; P's Depo. at 55:18-20; Williams Decl. ¶ 25.)  In June 2021, Williams was promoted to Lieutenant and transferred out of VGNET.  (Ds' 56.1 Stmt. ¶ 37.)  Young was then assigned to also be a Senior Investigator in VGNET but also continued to serve as Senior Investigator in the CSU.  (P's 56.1 Resp. ¶ 40; P's Decl. ¶ 4; Williams Depo. at 54:7-14.)

Although several Investigators within Troop F were promoted to Senior Investigator during Plaintiff's tenure, Plaintiff herself was never promoted.  (Ds' 56.1 Stmt. ¶¶ 6, 49, 51-52.) The qualifications for a Senior Investigator position include at least two years of investigatory experience, demonstrated superior ability in investigative work and reporting, leadership qualities, and a satisfactory rating on the most recent Performance Evaluation.  (*Id.* ¶ 9; ECF No. 79-3 at 3-4.)  There are no formal postings for Senior Investigator positions.  (Ds' 56.1 Stmt. ¶ 11; P's 56.1 Resp. ¶ 11.)  Rather, there is typically "general knowledge" when a position is opening up.  (Ds' 56.1 Stmt. ¶ 11.)  Investigators may express interest to the Senior Investigators supervising them, or they may be approached by a Senior Investigator and informed that they would make a good candidate.  (*Id.*)  After this discussion between the Investigator and Senior Investigators, the Senior Investigators speak with the Lieutenant, and if the Lieutenant supports

the Investigator's candidacy, the Investigator will be told to submit a memorandum and abstract. (*Id.*)  The memorandum and abstract packet – which includes comments from and is signed by both a Senior Investigator and the Lieutenant – is then sent to the zone commander, and if the zone commander endorses the candidate, that endorsement, along with the memorandum and abstract, is sent to the Major serving as the Troop Commander.  (*Id.*)  The Major then decides whether to interview the candidate, and if the candidate has a successful interview, the Major signs the abstract and adds the candidate's name to a list of eligible Investigators, which list is then sent to the Troop Captain.  (*Id.*)  The Troop Captain then determines which candidates on the list to ultimately recommend for promotion and forwards their names to the Superintendent in Albany.  (*Id.*)  This list is submitted twice a year, on May 1 and November 1.  (P's 56.1 Resp. ¶ 11; Kolek Decl. ¶ 19.)

But not all promotions proceed according to this general system.  (P's 56.1 Resp. ¶ 11; *see* ECF No. 85-1 ("Kolek Depo.") at 27:3-38:18 (explaining that this is the "traditional method" but that "[i]t doesn't always happen that way"); ECF No. 85-4 ("Webster Depo.") at 25:8-15 ("[m]ore often than not" abstract is submitted after Senior Investigator approaches candidate).)  For example, if a Lieutenant or Captain was not interested in promoting a particular Investigator, they would tell the Senior Investigators "not to bother with that person."  (P's 56.1 Resp. ¶ 11; *see* ECF No. 85-3 ("Browne Depo.") at 19:6-16, 20:8-17.)  Plaintiff also contests that an abstract is always required in order for an Investigator to be considered for promotion, and contends that Conan Duelk, one of the individuals promoted over her, never submitted an abstract prior to his promotion.  (P's 56.1 Resp. ¶ 11; *see* Kolek Depo. at 35:16-24 (abstract and memorandum "typically" required).)

During the relevant period, each Defendant was involved, in some capacity, in the promotion of candidates to Senior Investigator.  From January 2020 through October 2021, Webster, in his capacity as Captain, recommended the promotions of Defendant Williams, Sue Buckley, Christopher Fox, Kevin O'Keeffe, Ben Cooper and Matt Callahan, all of whom had been recommended by both their first- and second-line supervisors.  (Ds' 56.1 Stmt. ¶¶ 45-46.) After replacing Webster as Captain, Kolek recommended Tim Jordan, Conan Duelk and Kurt Labuda.  (*Id.* ¶ 49.)  During his tenure as Lieutenant, Browne recommended Christopher Fox for promotion.  (*Id.* ¶ 48.)  Browne also endorsed the promotion of Defendant Williams to Acting Senior Investigator, on Young's initial recommendation.  (*Id.* ¶¶ 48, 51-52.)[5]  Finally, Williams participated, in his role as Lieutenant, in discussions regarding the promotion of several candidates, including Jordan – whom Williams recommended – and Labuda.  (Williams Decl. ¶¶ 42-43, 60; Williams Depo. at 37:16-18, 38:21-40:11; ECF No. 85-10 (Labuda promoted December 2021); ECF No. 85-20 (Jordan promoted July 2022).)

Defendants contend that none of Plaintiff's first-line supervisors (*i.e.*, the Senior Investigators supervising her) ever recommended her promotion.  (Ds' 56.1 Stmt. ¶¶ 43, 47; ECF No. 89 ("Webster Decl.") ¶¶ 61-62, 73; Kolek Decl. ¶ 43; ECF No. 77 ("Browne Decl.") ¶¶ 35, 39, 103-04.)  And while it was generally known that Plaintiff, like most Investigators, aspired to become a Senior Investigator, (Webster Depo. at 14:11-18; Williams Depo. at 26:6-14; P's Depo. at 67:6-18), and she so indicated on her 2019 annual evaluation, (*see* ECF No. 85-5 at 29), she never expressed interest in the position to any of the Defendants directly, (Ds' 56.1 Stmt. ¶¶ 31,

---

[5] Young also suggested that both Williams and Duelk would be good candidates to take over his role as Senior Investigator in the CSU when he was contemplating a transfer to Major Crimes, as Williams and Duelk were the two Investigators working beneath him in the CSU, (Ds' 56.1 Stmt. ¶¶ 53-54), but it does not seem that this transfer ever materialized or that either Williams or Duelk were promoted on this basis, (*see* ECF No. 91 ("Young Decl.") ¶ 2).

35, 39).  Plaintiff, however, claims that two Senior Investigators informed her that they had proffered her name to Captain Webster and Lieutenant Browne, and that other Senior Investigators told her that they felt she deserved promotion but that there was "no use" presenting her as a candidate because the current bosses would be unwilling to promote her.  (P's 56.1 Resp. ¶ 43.)[6]

Plaintiff claims that she was more qualified for promotion than Williams, Labuda, Duelk and Jordan due to her superior training and experience in areas such as polygraph exams and undercover operations.  (P's Decl. ¶¶ 18-21.)  She also points out various blemishes in the records of these individuals, including that Labuda had a poor relationship with the Sullivan County District Attorney's office ("SCDA"), that Duelk had received a letter of censure in 2011 for his demeanor while investigating a car accident, and that Jordan often made "missteps" in interviews and was once "remediated" for stopping a confession by a pedophile.  (*Id.* ¶¶ 19-21; *see* ECF No. 85-17.)  Plaintiff also claims that she was treated less well than male employees

---

[6] The only evidence cited in support of these contentions is Plaintiff's own testimony as to her alleged conversations with these supervisors, (P's 56.1 Resp. ¶ 43; *see* P's Decl. ¶ 6), which is inadmissible hearsay, *see Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) (plaintiff's affidavit testifying as to what he "was told" was inadmissible hearsay in violation of Rule 56); *Great Lakes Reinsurance (UK) SE v. Herzig*, No. 16-CV-9848, 2023 WL 4266012, at *6 (S.D.N.Y. June 29, 2023) (to the same effect).  Plaintiff failed to submit declarations or deposition testimony from any of the supervisors who supposedly supported her promotion, or any other admissible evidence supporting her contention that she was in fact recommended.  Nonetheless, Defendants failed to raise any hearsay objection in their reply, or even in their response to Plaintiff's improper Counterstatement.  (*See* ECF No. 82 ¶ 7 (including boilerplate objection labeling Plaintiff's statement "[a]rgumentative, conclusory, not based on competent evidence, and self-serving," and denying that the statement is supported by the evidence cited, but failing to specifically make hearsay argument).  The Court may therefore consider any such objection waived for purposes of the motion.  *See Geomatrix Sys., LLC v. Eljen Corp.*, No. 20-CV-1900, 2025 WL 777218, at *3 (D. Conn. Mar. 11, 2025); *Fezzani v. Dweck*, No. 99-CV-793, 2024 WL 3794412, at *7 n.6 (S.D.N.Y. Aug. 13, 2024), *aff'd*, No. 24-2478, 2025 WL 3061340 (2d Cir. Nov. 3, 2025) (summary order); *Thomsen v. Kefalas*, No. 15-CV-2668, 2018 WL 1508735, at *14 (S.D.N.Y. Mar. 26, 2018).

throughout her time with the NYSP, as she received less praise after case successes than male employees did, (P's Decl. ¶¶ 24-27, 32); once had a case taken away from her and given to a male employee, (*id.* ¶ 28); was given a "highly unusual" order to cease work on a case until a meeting was held at headquarters, (*id.* ¶ 25); was required to write a memo regarding overtime hours, (*id.* ¶¶ 33, 43); was asked if there were issues in her personal life and contacted by an employee assistance representative because she was no longer "friendly and smiling" after an incident (discussed below) in which she was accused of insubordination, (*id.* ¶ 35); was once cursed at by Defendant Williams, (*id.* ¶ 40); and was not permitted to pursue an FBI Task Force Officer position, (*id.* ¶ 42).

While Plaintiff's strong work ethic and polygraph skills were commended by her supervisors, (Ds' 56.1 Stmt. ¶ 55; ECF No. 85-5 at 18, 20), her relationships with her superiors and coworkers at times could be contentious, (Ds' 56.1 Stmt. ¶¶ 55, 66, 69; P's Depo. at 49:6-10, 50:4-15, 56:3-8; Webster Decl. ¶¶ 23-24.) Defendants also claim that on several occasions, Plaintiff violated protocol or was otherwise insubordinate. First, in or around February 2021, Plaintiff was informally reprimanded for disclosing the identity of an NYSP confidential informant to the SCDA. (Ds' 56.1 Stmt. ¶¶ 58-60; Browne Decl. ¶¶ 60-76.) Plaintiff, who had been working on the case since November 2020, had wanted to obtain a search warrant using the confidential informant, but her Senior Investigator and Browne directed her not to pursue the warrant and to instead either make an arrest or seek an indictment. (Ds' 56.1 Stmt. ¶¶ 56-57.) Soon after this meeting, the SCDA contacted the NYSP about assisting with a search warrant at the target's house, and explained that Sullivan County and the Liberty Police Department were using the NYSP's confidential informant to conduct a controlled buy from the target. (Browne Decl. ¶¶ 59-61.) Plaintiff admits that she disclosed the identity of the confidential informant, but

maintains that she did so in order to procure an indictment, which she needed to do through the District Attorney's office, and that this practice was commonplace and did not violate any protocol. (P's 56.1 Resp. ¶ 58; P's Decl. ¶ 7, 9; ECF No. 79-9.) While Defendants do not dispute that Plaintiff would have needed to work with the District Attorney's office to get an indictment, they assert that Plaintiff's conduct was nonetheless a breach of protocol, as no member of the NYSP is permitted to furnish the identity of a confidential informant to anyone outside of the NYSP absent approval from the Assistant Deputy Superintendent of the BCI. (Ds' 56.1 Stmt. ¶¶ 57-58; Browne Decl. ¶¶ 57, 62-65; Browne Depo. at 57:9-60:2.)[7] Plaintiff was required to submit a memorandum to Browne explaining the incident, in which she conceded that she introduced the confidential informant to a detective at the District Attorney's office but represented that she had done so for indictment purposes. (ECF No. 79-9; Ds' 56.1 Stmt. ¶ 59.) Plaintiff did not receive any formal discipline, but was thereafter prohibited from working on cases in Sullivan County. (Ds' 56.1 Stmt. ¶¶ 60-61; Browne Decl. ¶¶ 74-75.)

Defendants also accuse Plaintiff of several other instances of misconduct that Plaintiff denies. Williams testified that Plaintiff again violated protocol in May 2021, when she committed to purchasing $3,000 worth of drugs from a target without first obtaining the necessary approval from the BCI Captain. (Ds' 56.1 Stmt. ¶¶ 62-65; Williams Depo. at 47:8-24.) Plaintiff claims that the commitment was made by other officers. (P's 56.1 Resp. ¶ 62; P's Decl. ¶ 10.) And Kolek testified that Plaintiff abruptly quit the polygraph program by leaving "thousands of dollars of equipment in the hallway at Troop F Headquarters" without explanation,

---

[7] While Defendants do not expressly state how Plaintiff's conduct was insubordinate in addition to a breach of protocol, it appears that Defendants felt that Plaintiff had disclosed the confidential informant's identity so that Sullivan County would pursue the warrant after her superiors declined to do so.

(Ds' 56.1 Stmt. ¶ 71; Kolek Depo. at 156:13-19), but Plaintiff counters that she left the equipment outside the door to the Major Crimes Unit, an area that could be accessed only with NYSP identification, and advised a supervisor that she had done so, (P's 56.1 Resp. ¶ 71; P's Decl. ¶ 12).  Finally, in July 2022, the NYSP responded to an incident at Plaintiff's home in which her husband was investigated for allegedly firing an AR-style rifle into the trees of their neighborhood.  (Ds' 56.1 Stmt. ¶ 72.)  The initial investigation was conducted by SP Liberty, which closed the case after finding no basis to proceed against Plaintiff's husband, but Troop F reopened the case and initiated proceedings to obtain a Temporary Extreme Risk Protection Order ("TERPO").  (*Id.* ¶ 73; P's 56.1 Resp. ¶¶ 72-73; P's Decl. ¶ 14.)  The TERPO was initially granted, but the Sullivan County New York State Supreme Court then dismissed it.  (Ds' 56.1 Stmt. ¶ 73.)  Defendants claim that "questions arose as to whether Plaintiff was withholding information" during the investigation, which led to an administrative investigation, but the investigation could not be completed because Plaintiff went out on leave before ultimately retiring.  (Ds' 56.1 Stmt. ¶¶ 74-76.)  Plaintiff, on the other hand, denies that anyone from the NYSP ever accused her of withholding information or sought to interview her about the issue.  (P's 56.1 Resp. ¶¶ 74-75.)  She claims that she did not take her leave of absence in an attempt to avoid the investigation, but rather because the "longstanding hostility [she] had experienced" and the "baseless attack on [her] family" rendered her traumatized and unable to work.  (P's Decl. ¶ 14.)

### B.      Procedural History

Plaintiff filed her initial complaint on October 19, 2022, asserting hostile work environment and failure to promote claims against the current defendants as well as Senior Investigator Timothy Jordan and the NYSP.  (ECF No. 1 ("Compl.").)  After Defendants filed a

pre-motion letter in anticipation of their motion to dismiss, (ECF No. 32), the Court held a pre-motion conference on February 17, 2023, during which it granted Plaintiff permission to file an amended complaint, (*see* Minute Entry dated Feb. 17, 2023). Plaintiff declined to amend her complaint, and on May 12, 2023, Defendants filed a motion to dismiss. (ECF No. 38.)

On November 8, 2023, the Court issued a bench ruling on Defendants' motion, dismissing Plaintiff's hostile work environment claims as well as all claims against Defendant Jordan and the NYSP. (*See* Minute Entry dated Nov. 8, 2023.) The remaining Defendants filed their answer on February 21, 2024. (ECF No. 47.) After discovery concluded, Defendants filed a letter on March 18, 2025 requesting a pre-motion conference in anticipation of their motion for summary judgment. (ECF No. 60.) Plaintiff filed a reply letter on March 25, 2025, (ECF No. 61), and the Court held another pre-motion conference on April 1, 2025, (*see* Minute Entry dated Apr. 1, 2025). The instant motion followed. (*See* ECF No. 72.)

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *see Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party,

drawing all inferences in that party's favor."). "In considering a motion for summary judgment, the Court cannot render credibility assessments, which are reserved for the jury." *Jordan v. Gifford*, No. 19-CV-1628, 2022 WL 3106965, at *21 (D. Conn. Aug. 4, 2022).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). "If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials –

including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

### III.   DISCUSSION

Plaintiff's failure to promote claim is based on her gender and national origin.  (*See* Compl. ¶¶ 3, 168.)  In her brief in opposition to the instant motion, she at times relies only on gender, (*see* P's Opp. at 1, 2, 4), but elsewhere relies on both gender and national origin, (*see id.* at 9, 13, 14, 16, 25).

#### A.   Personal Involvement

Defendants first argue that Plaintiff has failed to establish that they were personally involved in denying her a promotion.  (ECF No. 81 ("Ds' Mem.") at 13-14.)  "Personal involvement of the individual Defendants in the alleged constitutional deprivations is a prerequisite to an award of damages against them under § 1983."  *Tierney v. City of N.Y.*, No. 02-CV-2403, 2007 WL 895133, at *20 (S.D.N.Y. Mar. 20, 2007); *see Haynes v. Exec. Chamber for Off. of Governor of N.Y.*, No. 23-CV-8051, 2025 WL 2780866, at *5 (S.D.N.Y. Sept. 30, 2025).  "As the Second Circuit has held, 'after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Van Denburgh v. New York*, No. 24-CV-989, 2025 WL 2483415, at *18 (N.D.N.Y. Aug. 28, 2025) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)); *see Wilson v. Yonkers Pub. Schs.*, No. 24-CV-184, 2025 WL 2689081, at *11 (S.D.N.Y. Sept. 19, 2025).  "Personal involvement is a question

of fact." *Wright v. City of Ithaca*, No. 12-CV-378, 2012 WL 1717259, at *2 (N.D.N.Y. May 15, 2012), *aff'd*, 633 F. App'x 63 (2d Cir. 2016). According to Defendants, "[t]he record establishes that no Defendant blocked any promotion Plaintiff sought, or recommended a less qualified white male for that promotion." (Ds' Mem. at 14.) In particular, they argue that no Defendant would have been in a position to consider Plaintiff's candidacy because none of her first-line supervisors ever initiated the promotion process or submitted her abstract and memorandum. (*Id.*)

The first issue with this argument is that, as discussed above, Plaintiff contends that two of her Senior Investigators *did* recommend her promotion. (*See* P's 56.1 Resp. ¶ 43.) If this were the case, then the fact that Plaintiff was never asked to submit an abstract and memorandum would be attributable to a higher-level supervisor's indication that she would not be considered. (*See* Ds' 56.1 Stmt. ¶ 11 (Senior Investigator only requests abstract and memorandum from candidate if Lieutenant is in accord with the recommendation).) But even if I were to disregard the hearsay statements Plaintiff submits regarding her first-line supervisors' alleged recommendations, there is other admissible evidence on the record indicating that the promotion process was not strictly bottom-up. For example, Kolek testified that, while serving as BCI Captain, not only was he "involved in every single one" of the promotions to Senior Investigator, but he even "initiated" the promotion of at least one Senior Investigator. (Kolek Depo. at 28:5-31:12.) And Browne testified that, as Lieutenant, "[i]f [he] had information that . . . [he] knew that a certain investigator would not make for a good senior investigator, [he] would make sure [he] would have that conversation with [his] senior investigators" so that they would not waste their time recommending that particular candidate. (Browne Depo. at 19:6-20:17.) Moreover, despite the fact that Plaintiff never submitted an abstract and memorandum, supervisors were

14

aware of and discussed her interest in a Senior Investigator position.  (*See* Webster Depo. at 14:11-15:6.)  Accordingly, a reasonable jury could find that Webster, Kolek and Browne, as Plaintiff's second- and third-line supervisors, played a role in her being passed over for promotion.

As to Defendant Williams, Plaintiff argues that, once he was promoted to Acting Senior Investigator in VGNET in February 2021, he could have used his authority as her first-line supervisor to recommend her for promotion.  (P's Opp. at 18-19.)  But during the four-month period in which Williams held this role, Plaintiff concedes that she did not work directly under him and instead worked more closely with Senior Investigator Fox.  (*See* P's 56.1 Resp. ¶ 34; Williams Depo. at 59:19-60:5; P's Depo. at 55:18-20; Williams Decl. ¶¶ 25, 31.)  Nor does Plaintiff provide any evidence that there were any opportunities for promotion within this four-month period.  (*See* ECF No. 85-10 (Labuda promoted December 2021); ECF No. 85-14 (Duelk promoted May 2022); ECF No. 85-20 at 3 (Jordan promoted July 2022).)  In light of Plaintiff's assertion that the Senior Investigators who were responsible for directly supervising her – including Fox – were not "decision-makers" and had no "influence in the promotion process or decision," (P's Decl. ¶ 5; P's 56.1 Resp. ¶ 42), it would defy logic to conclude that Williams, who was less familiar with Plaintiff's work than her direct supervisors, was personally involved in the NYSP's failure to promote her during a four-month period in which it does not appear any Senior Investigator positions were open.[8]  And while Williams was involved in the promotions

---

[8] Given that the list of potential candidates was submitted to Albany for approval every May and November, and that openings were filled from the list of candidates previously approved by Albany, (*see* Kolek Decl. ¶¶ 19-20; P's 56.1 Resp. ¶ 11), it is conceivable that recommending Plaintiff earlier in 2021 could have put her on the list of eligible candidates for promotion later in the year.  Nonetheless, particularly given Plaintiff's assertion that her Senior Investigators at this time were unable to influence the promotion process or decision, (*see* P's Decl. ¶¶ 5-6), the hypothetical possibility that a recommendation from Williams, who was not

15

of Jordan and Labuda after he was promoted to Lieutenant, (Williams Decl. ¶¶ 42-43, 60; Williams Depo. at 38:16-18, 39:2-40:11), he was no longer assigned to VGNET and had no supervisory authority over Plaintiff at that time, (Williams Decl. ¶ 54; Ds' 56.1 Stmt. ¶ 37). Thus, even crediting Plaintiff's assertion that Lieutenants influenced promotion decisions by communicating preferences to Senior Investigators prior to any formal recommendation, Williams would not have had the authority to do so given that he was not responsible for Plaintiff's unit.

Finally, as to Defendant Young, Plaintiff concedes that he could not have recommended her while he was a Senior Investigator in the CSU, but contends that he could have recommended her promotion once he also became a Senior Investigator in VGNET.  (P's Depo. at 78:4-16; P's 56.1 Resp. ¶ 40; P's Decl. ¶ 4.)  But like Williams, Young was never in a supervisory position directly over Plaintiff, as Plaintiff admits.  (P's 56.1 Resp. ¶ 39; Young Decl. ¶¶ 13-15.)  And the only promotion with which Young was involved was Williams's promotion to Acting Senior Investigator, which took place before Young became a Senior Investigator in VGNET.  (Young Decl. ¶ 33; Ds' 56.1 Stmt. ¶¶ 48, 52-53; P's 56.1 Resp. ¶ 40; ECF No. 85-8.)  Indeed, Plaintiff's gripe with Young does not appear to be that he had authority to advance her promotion and refused to do so, but rather that he indirectly influenced their shared supervisors' decision not to promote her by complaining about her and causing her to be reprimanded.  (P's 56.1 Resp. ¶ 40.)  But even assuming that Young disliked Plaintiff and purposely made her look bad, this does not amount to personal involvement absent evidence that Young actually participated in the challenged decisions.  *See Dolson v. N.Y. State Thruway*

---

supervising her, could have eventually led to a promotion months later is insufficient for a reasonable jury to find his personal involvement.

16

*Auth.*, 80 F. App'x 694, 696 (2d Cir. 2003) (summary order) (dismissing claims for lack of personal involvement where there was no evidence that defendants participated in the decision to terminate plaintiff, despite the fact that defendants "harassed [plaintiff], issued formal reprimands for his conduct, and expressed the desire to have his employment terminated"); *Hettiarachchi v. County of Suffolk*, No. 14-CV-6731, 2020 WL 5848617, at *14 (E.D.N.Y. Sept. 30, 2020) ("While [defendant] gave Plaintiff a negative evaluation, there is no evidence that she recommended Plaintiff's termination.  [Defendant] testified that she had no involvement in Plaintiff's termination and Plaintiff has not identified any evidence to the contrary."); *see also Gregg v. IBEW Loc. Union 305*, No. 08-CV-160, 2010 WL 4496643, at *4, 12 (N.D. Ind. Nov. 1, 2010) (dismissing claim for lack of personal involvement where defendant was not a member of  committee that decided to terminate plaintiff, even though defendant issued misconduct report that required plaintiff to appear before committee).

Accordingly, while Plaintiff has submitted sufficient evidence of personal involvement on the part of Webster, Kolek and Browne, she has failed to do so for Williams or Young, and the claims against these two Defendants are dismissed.

### B.    Failure to Promote

But even if a reasonable jury could find that Webster, Kolek and Browne were involved in the decision not to promote Plaintiff, she has not met her burden to show that this decision was motivated by discrimination.

"Discrimination claims brought under Section 1983 are evaluated under the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Bellis v. N.Y.C. Dep't of Educ.*, No. 21-CV-3282, 2024 WL 1177232, at *6 (S.D.N.Y. Mar. 19, 2024).  Under *McDonnell Douglas*, the plaintiff first bears the burden of showing a

17

*prima facie* case of discrimination.  *Id.*  In the failure to promote context, a plaintiff establishes a *prima facie* case by showing:

> (1) that [s]he is a member of a protected class; (2) that [s]he applied for a promotion to a position for which [s]he was qualified; (3) that [s]he was rejected for the position; and (4) after this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff, or the employer kept the position open and continued to seek applicants.

*Gordon v. City of N.Y.*, No. 14-CV-6115, 2015 WL 3473500, at *7 (S.D.N.Y. June 2, 2015); *see Moore v. N.Y.C. Transit Auth.*, No. 16-CV-69, 2023 WL 2667000, at *5 (E.D.N.Y. Mar. 28, 2023).  Where promotional opportunities are informal, *i.e.*, not obtained by application, an employee must "demonstrate that . . . the vacancy at issue was not posted and . . . the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer."  *Digilov v. JPMorgan Chase Bank, N.A.*, No. 13-CV-975, 2015 WL 685178, at *11 (S.D.N.Y. Feb. 18, 2015); *see Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 129 (2d Cir. 2004) ("[W]e have held that if an employee expresses to the employer an interest in promotion to a particular class of positions, that general expression of interest may satisfy the requirement that the employee apply for the position."), *abrogated on other grounds by Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

If the plaintiff meets the initial burden of establishing a *prima facie* case, "the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions."  *Richard v. N.Y.C. Dep't of Educ.*, No. 16-CV-957, 2022 WL 4280561, at *21 (E.D.N.Y. Sept. 15, 2022).  This burden "is not a particularly steep hurdle."  *Id.*  If the defendant meets this burden, "the plaintiff must then show that the employer's reason is illegitimate or is mere pretext for an impermissible discriminatory motive."  *Anderson v. Nassau Cnty. Dep't of Corr.*, 558 F. Supp. 2d

18

283, 298-99 (E.D.N.Y. 2008); *see Azon v. Metro. Transp. Auth.*, No. 00-CV-6031, 2002 WL 959563, at \*5 (S.D.N.Y. May 9, 2002).

Unlike in Title VII cases, however, to meet the third stage of the test under § 1983, a plaintiff must establish that the defendant's discriminatory intent was a "but-for" cause of the adverse employment action. *See Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019). Thus, rather than proving that that an "employer's stated non-discriminatory reason was *not the exclusive* reason for the adverse employment action," as would suffice under Title VII, a § 1983 plaintiff must establish that an "employer's stated reason would not, alone, constitute a *sufficient* basis for pursuing an adverse action." *Id.* at 214-15 (emphasis in original). "It is insufficient to establish simply that invidious discrimination was 'a motivating factor' of the offending conduct." *Id*. at 214. "In other words, a § 1983 plaintiff must establish that the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action," *id.* at 215, "*and* that more likely than not discrimination was the real reason for – and the but-for cause of – the challenged actions," *Bellis*, 2024 WL 1177232, at \*6 (emphasis in original). "Accordingly, a court considering a § 1983 claim at summary judgment must determine whether, construing the evidence in a light most favorable to the plaintiff, a reasonable jury could find that the adverse employment action would not have occurred 'but-for' [gender and national origin] discrimination." *Naumovski*, 934 F.3d at 214.

### 1.    *Prima Facie* Case

"The burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal," *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016); *see M.R. v. Rispole*, No. 22-CV-756, 2025 WL 71657, at \*3 (N.D.N.Y. Jan. 10, 2025) (§ 1983 case).

19

While they concede that Plaintiff has established membership in a protected class, Defendants argue that Plaintiff has failed to establish a *prima facie* case because she never applied for a Senior Investigator position or specifically asked Defendants about promotion. (*See* Ds' Mem. at 17-18.)  But where, as here, promotions are not advertised by the employer, a plaintiff may satisfy her burden at the *prima facie* stage by showing that she generally expressed interest in promotion to a particular position or class of positions.  *See McKenzie v. Grand Cent. P'ship*, No. 14-CV-6549, 2016 WL 1180191, at *4 (E.D.N.Y. Mar. 25, 2016) ("[A] plaintiff who has indicated an interest in being promoted to a particular class of positions but was unaware of specific available positions because the employer never posted them is not required to show that she applied for the specific job at issue."); *Constance v. Pepsi Bottling Co. of N.Y.*, No. 03-CV-5009, 2007 WL 2460688, at *17 (E.D.N.Y. Aug. 24, 2007) (to the same effect).  As Defendants concede, openings for Senior Investigator positions were not formally posted.  (Ds' 56.1 Stmt. ¶ 11; Williams Depo. at 21:10-15.)  And Plaintiff expressed that she aspired to promotion both in her 2019 annual evaluation, (*see* ECF No. 85-5 at 29), and to her first-line supervisors, (P's Decl. ¶ 6).

Defendants also argue that Plaintiff has provided no evidence of discriminatory intent. (Ds' Mem. at 19.)  As discussed above, a plaintiff may establish a *prima facie* failure to promote case by showing that the position sought "was filled by someone outside the protected class who was similarly or less well qualified than the plaintiff."  *Gordon*, 2015 WL 3473500, at *7. While, as discussed below, the parties dispute the relative qualifications of Plaintiff and the officers promoted over her, Plaintiff's experience, investigative abilities, and performance evaluations suggest that she was at least similarly qualified to the white males promoted over

20

her.  (Ds' 56.1 Stmt. ¶¶ 2, 9, 55; ECF No. 85-5.)  She has therefore met the minimal burden of establishing a *prima facie* case.

### 2.    Legitimate Non-Discriminatory Reasons

At the second step of the *McDonnell-Douglas* test, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (emphasis in original).  The employer's burden at this stage is "not a particularly steep hurdle."  *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 392 (S.D.N.Y. 2016).

Defendants have provided several nondiscriminatory reasons why Plaintiff was never promoted to Senior Investigator.  First, Defendants claim that Plaintiff was not suited for promotion because she was insubordinate, citing in particular the incident where Plaintiff revealed the identity of a confidential informant to the SCDA, allegedly to assist it in obtaining a search warrant that her superiors had prohibited.  (*See* Kolek Decl. ¶¶ 48-50; Webster Decl. ¶¶ 33-38, 41-45; Browne Decl. ¶¶ 49, 60, 62-65, 73, 105; ECF No. 79-9.)[9]  Prior insubordination provides a legitimate reason not to promote, even where, as here, it does not lead to formal disciplinary charges.  *See McLean-Nur v. Dep't of Transp.*, No. 98-CV-819, 2000 WL 297176, at *6 (S.D.N.Y. Mar. 21, 2000) (defendants' "satisfactory neutral, non-discriminatory reasons" for

---

[9] Defendants also cite additional instances of alleged insubordination, such as the incident with the unauthorized drug buy, (*see* Ds' 56.1 Stmt. ¶¶ 62-65; Williams Depo. at 47:8-24), and the alleged complaint regarding Plaintiff's potential withholding of information during the investigation of her husband, (*see* Ds' 56.1 Stmt. ¶¶ 74-76; Kolek Decl. ¶¶ 66-67).  But given that whether these incidents occurred at all is a disputed fact, (*see* P's 56.1 Resp. ¶¶ 62, 74-75), summary judgment would not be warranted on these bases.

21

failing to promote plaintiff included that she failed to follow supervisors' orders and argued with supervisors, even though disciplinary charges against plaintiff were ultimately dismissed).

Defendants also cite Plaintiff's interpersonal conflicts with colleagues. (*See* Ds' 56.1 Stmt. ¶¶ 55, 66, 69; Webster Decl. ¶¶ 23-24, 28, 75-76; *see also* P's Depo. at 32:5-13; 49:6-10, 50:4-15, 56:3-8.) Given that leadership qualities are one of the three substantive criteria for the Senior Investigator position, (*see* ECF No. 79-3 at 3), Plaintiff's contentious relationships with fellow officers presented a legitimate reason for not promoting her, *see Bringley v. Donahoe*, 499 F. App'x 116, 119-20 (2d Cir. 2012) (summary order) (summary judgment correctly awarded in favor of defendant where evidence showed that Plaintiff, despite her technical knowledge, exhibited relatively poor interpersonal skills on the job); *Coppin v. N.Y.C. Hous. Auth.*, No. 14-CV-7032, 2016 WL 3190253, at *6 (S.D.N.Y. June 7, 2016) (doubts about plaintiff's ability to work as a member of a team was legitimate reason not to promote).[10] Relatedly, while Plaintiff contends that she did not leave the polygraph equipment in a public place, she does not dispute that she quit the polygraph program without notice by leaving the equipment in a hallway. (*See* Kolek Depo. at 156:13-19; Kolek Decl. ¶¶ 51-52; P's Decl. ¶ 12.) "Unprofessional conduct is a legitimate, non-discriminatory reason for [an adverse employment action]." *Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 147 (S.D.N.Y. 2021).

Finally, while Plaintiff argues that she "had more experience as an investigator tha[n] all but one of the males who were promoted in her stead" and "had no disciplinary record while several promoted did," and argues in particular that she was more qualified for promotion than

---

[10] Defendants allege that demonstrated leadership qualities were the most important factor influencing the promotion decision, (*see* Kolek Decl. ¶ 23; Browne Decl. ¶ 21; Webster Depo. at 23:15-17), but even if that testimony is disregarded, Plaintiff does not dispute that leadership was one of the few criteria for the job, (*see* P's 56.1 Resp. ¶ 9).

Williams, Labuda, Duelk and Jordan, (P's Opp. at 9-12),[11] Defendants contend that each candidate selected for promotion during the relevant time period was a better fit for the role than Plaintiff, (Ds' Mem. at 21-22).  As to Williams, he was first recommended by Young because Young was familiar with his work after supervising him in the CSU, (ECF No. 79-8 ("Young Depo.") at 21:7-25, 23:1-25), and Browne endorsed Williams's promotion because he was an "outstanding Investigator" who had "extensive experience with narcotics and firearm investigations" and knew "how to manage cases and run confidential informants," (Browne Decl. ¶ 30).  Browne also noted that Williams had the leadership skills necessary for the Senior Investigator role:  he was "approachable and diplomatic;" "worked well with other units and agencies;" "took direction well and was always professional;" was "dependable, always accountable and had high integrity;" and had previously filled in as supervisor when supervisors in the CSU were off or on vacation.  (*Id.*)  Labuda, who was initially recommended by Investigator Post, was a "logical fit" for the Senior Investigator position in SP Monroe because he had "extensive experience working in the SP Liberty criminal squad."  (Kolek Decl. ¶¶ 35-36.)  Likewise, Jordan was the "logical fit" for the Senior Investigator position in SP Montgomery because he had worked in the area before and had good relationships there, and because he was "[u]niversally . . . well-liked, he was a good leader, [and] a good cop."  (Kolek Depo. at 129:17-130:2; Kolek Decl. ¶ 34; Williams Decl. ¶ 60.)  Finally, Duelk was promoted to a Senior Investigator position in the CSU because he "exemplified qualities of leadership," demonstrated by his "skills as a unifier" and his ability to work well with others and with outside

---

[11] Plaintiff also claims that another white male, Ryan Leone, was transferred to Major Crimes, which was a "stepping-stone to the Senior Investigator position."  (P's Decl. ¶ 22; P's Opp. at 12-13.)  But Plaintiff provides no evidence that she sought out this transfer, despite the fact that she affirmatively sought other transfers.  (P's Decl. ¶ 38.)

agencies; he had a "proven record at being effective in getting guns off the streets, a critical component of the mission of the CSU;" and he had a "commanding knowledge of the CSU unit and its mission" based on his experience working in the unit. (Kolek Decl. ¶¶ 29-32; Kolek Depo. at 119:12-120:21; Young Decl. ¶ 32.) While many of these considerations are subjective, "[t]here is nothing unlawful about an employer basing its hiring decision on subjective criteria." *Kallinikos v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 481 F. Supp. 3d 76, 86 (E.D.N.Y. 2020); *see Philippe v. Santander Bank, N.A.*, No. 15-CV-2918, 2018 WL 1559765, at *11 (E.D.N.Y. Mar. 31, 2018) ("Where an employer's explanation, offered in clear and specific terms, is reasonably attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn.").

Defendants' stated reasons are thus sufficient to meet their burden at the second stage of the *McDonnell Douglas* framework. Accordingly, the Court focuses on whether the Plaintiff has met her third-stage burden of showing that the non-discriminatory reasons were a pretext for discrimination.

### 3.    Pretext for Discrimination

Plaintiff does not contend that anyone – Defendants, decisionmaker or otherwise – ever made any comment evidencing hostility toward her gender or national origin. Nor does she suggest that any other women or Hispanic people were unfairly treated. She nevertheless contends that a reasonable jury could conclude that Defendants' stated reasons for not promoting her were false and that she would have been promoted but for Defendants' animosity toward her gender and national origin.

Plaintiff first disputes Defendants' claim that she was insubordinate by pointing to positive performance reviews from non-Defendant supervisors, who praised her hardworking

24

nature and leadership skills.  (P's 56.1 Resp. ¶ 55; P's Opp. at 19-20; ECF No. 85-5 at 2, 10, 18, 20.)  But the fact that other supervisors commended Plaintiff's performance on other occasions does not negate Defendants' determination that Plaintiff had acted insubordinately and violated protocol during the incident involving the confidential informant.  *See Forte v. Liquidnet Holdings, Inc.*, No. 14-CV-2185, 2015 WL 5820976, at *11 (S.D.N.Y. Sept. 30, 2015) ("[D]ifferences between supervisors' reviews of an employee's performance are generally insufficient to demonstrate pretext."), *aff'd*, 675 F. App'x 21 (2d Cir. 2017); *Gutierrez v. City of N.Y.*, 756 F. Supp. 2d 491, 505 (S.D.N.Y. 2010) ("Evidence that Plaintiff . . . received some positive reviews does not demonstrate Defendants did not base their decision on negative reports they received."), *reconsideration denied*, No. 08-CV-6537, 2011 WL 7832709 (S.D.N.Y. Sept. 26, 2011).

Plaintiff contests Defendants' characterization of the Sullivan County incident as insubordination or a breach of protocol, (P's 56.1 Resp. ¶ 58; P's Decl. ¶¶ 7-9), and argues that "[a]ny hoopla aroused by this conduct manifested the bias of ranking members, not justifiable sanction, or counseling," (P's Opp. at 20).  Nonetheless, Plaintiff does not deny that the incident took place, nor that she indeed furnished the identity of a confidential information to an outside agency, (P's 56.1 Resp. ¶ 58; ECF No. 79-9).  And although she argues that Defendants' description of the incident "is inaccurate and betrays a stunning ignorance," (P's Decl. ¶ 7), and that Defendants' resulting decision to bar her from Sullivan County was "entirely unjustified," (*id.* ¶ 9), she provides no evidence suggesting that Defendants did not actually believe she had acted improperly or accused her of doing so for discriminatory reasons, and her assertion that

Defendants' reaction to the incident reflected bias against her is wholly conclusory.[12]  Thus, Plaintiff's insistence that her actions were not improper does not suffice to establish that Defendants' reliance on this incident is a pretext for discrimination.  *See Flanagan v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-5246, 2014 WL 4905124, at *12 (E.D.N.Y. Sept. 30, 2014) ("[I]t is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct or deficient performance, or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination."); *Jean v. Acme Bus Corp.*, No. 08-CV-4885, 2012 WL 4171226, at *15 (E.D.N.Y. Sept. 19, 2012) (to the same effect); *Taylor v. Polygram Recs.*, No. 94-CV-7689, 1999 WL 124456, at *10 (S.D.N.Y. Mar. 8, 1999) ("[Plaintiff's] fundamental disagreement with the conclusions her supervisors drew from incidents which she admits occurred, and her subjective belief that they should not have reflected badly on her performance because they were someone else's fault, is not evidence that her supervisors' appraisals were a sham, invented to mask discrimination.").[13]

---

[12] Plaintiff contends that supplying the identity of an informant to the District Attorney is often necessary in order to procure an indictment, (P's Decl. ¶ 7), which was one of the paths her supervisors had approved, (ECF No. 79-9), and that she "did not initiate a search warrant against her superiors' desire," (P's Opp. at 20).  But she does not deny introducing the NYSP informant to the SCDA investigator expecting that the latter was going to seek a search warrant, nor does she dispute that she did not inform her superiors that the informant had been used by the SCDA for an undercover buy.  (ECF No. 79-9; *see* Browne Decl. ¶¶ 49-79.)

[13] Defendants claim that Plaintiff violated Article 32(F)2 of the NYSP manual, (Ds' 56.1 Stmt. ¶ 60), which requires the permission of the BCI Assistant Deputy Superintendent before the identify of a confidential informant can be disclosed to anyone outside the NYSP, (Browne Decl. ¶¶ 63-64), while Plaintiff insists that her conduct "did not violate any provision of any operative manual," (P's 56.1 Resp. ¶ 60).  The Court cannot understand why neither party supplied the relevant provisions of the manual, which would presumably resolve this dispute. Nonetheless, given that the relevant question is whether the employer possessed a "good faith *belief* that an employee engaged in misconduct," regardless of whether the employer is actually correct, *see Nieves v. Avalonbay Communities, Inc.*, No. 06-CV-198, 2007 WL 2422281, at *9 (D. Conn. Aug. 23, 2007) (emphasis in original); *see Droutman v. N.Y. Blood Ctr., Inc.*, No. 03-

Plaintiff contends that she was not responsible for the unauthorized drug buy, that she never endangered the polygraph equipment, that she did not fail to cooperate in the investigation involving her husband, and that her testimony contradicting these accusations is sufficient evidence of pretext to defeat summary judgment. (*See* P's Opp. at 20-21.) Citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), she contends that a jury may credit her testimony that Defendants' stated reasons are false, and infer from this that Defendants' true reasons were discriminatory. (*See* P's Opp. at 21.) But while *Reeves* held that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation," *Reeves*, 530 U.S. at 147 (emphasis in original), the Court clarified that whether judgment as a matter of law is appropriate must be determined on a case-by-case basis, taking into account "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law," *id.* at 148-49.

Unlike *Reeves*, where there was "substantial showing" in the record contradicting the defendant's stated reasons, *id.* at 144, Plaintiff's only evidence that Defendants' accusations against her are false is her own testimony. She does not even dispute much of Defendants' versions of those events, which concededly occurred, but rather disagrees with Defendants' evaluation of her responsibility for them. But "[h]er disagreement with defendants over whether her behavior was inappropriate does not show that their stated reasons for [not promoting] her were not their true reasons." *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 117 (2d Cir. 2010) (summary order).

---

CV-5384, 2005 WL 1796120, at *9 (E.D.N.Y. July 27, 2005), whether Plaintiff actually violated protocol is ultimately immaterial.

And while the fact that white males were promoted over Plaintiff sufficed to meet her minimal burden on her *prima facie* case, it is insufficient – both standing alone and in combination with Plaintiff's minimal evidence of falsity – to allow a reasonable jury to infer that Defendants' stated reasons were pretext for discrimination.  *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 155 n.1 (2d Cir. 2000) (factfinder could not reasonably find discrimination simply because plaintiff was replaced by an individual not in protected class and denied engaging in conduct that prompted termination); *Luo v. AIK Renovation Inc.*, No. 23-CV-5878, 2024 WL 4444283, at *10 (S.D.N.Y. Oct. 8, 2024) ("[A] defendant is entitled to summary judgment where the only evidence of discrimination is that the terminated plaintiff is replaced by a person whose membership in protected classes is not identical to plaintiff's, there are no remarks or surrounding evidence suggesting discrimination, and plaintiff's evidence of pretext is weak."); *see also Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 417 (2d Cir. 2011) (summary order) ("[Plaintiff] has failed to offer sufficient evidence – aside from her own self-serving and conclusory allegations that [Defendants'] proffered nondiscriminatory reasons for these actions are false – to permit a reasonable factfinder to conclude that [Defendants] . . . w[ere] in fact motivated by discriminatory animus.").[14]

---

[14] Plaintiff also argues that Defendants' disclaimers of involvement in the promotion process are untrue, and that the fact that they denied playing a role creates an inference of discrimination.  (P's Opp. at 23-24.)  As discussed above, Defendants Webster, Browne and Kolek may have had the ability to influence the promotion process as second- and third-line supervisors, such as by initiating the promotion process on Plaintiff's behalf or, on the other hand, telling lower-level supervisors not to recommend her.  But this does not necessarily contradict their claim that Plaintiff was never considered for promotion because she was never recommended by a first-line supervisor.  (*See, e.g.*, Kolek Decl. ¶ 46; Webster Decl. ¶ 62.)  In other words, even assuming Defendants could have taken a more active role in promoting Plaintiff, they may not have been motivated to do so if they were not prompted by her immediate supervisors.  And while Plaintiff insists that she *was* recommended, her evidence in support of this contention, like her evidence contradicting Defendants' various accusations of insubordination, is her own testimony (and hearsay at that).  While this may (given Defendants'

Nor can Plaintiff save her claims by arguing that she was more qualified than those who were promoted. While "qualifications evidence may suffice, at least in some circumstances, to show pretext, even where there is no additional evidence of discriminatory animus," *Brophy v. Chao*, No. 17-CV-9527, 2020 WL 4040742, at *11 (S.D.N.Y. July 16, 2020), a plaintiff relying on such evidence must show that her qualifications are "so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question," *Szewczyk v. Saakian*, No. 21-672, 2022 WL 2037196, at *2 (2d Cir. June 7, 2022) (summary order); *see Moy v. Perez*, 712 F. App'x 38, 41-42 (2d Cir. 2017) (summary order) ("[W]hen a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination.").

For each of the four white males with whose promotion Plaintiff expressly takes issue – Williams, Labuda, Jordan and Duelk – Plaintiff highlights the various skills, experience, and training that she believes she possesses and they do not. But she fails to explain why the areas in which she excelled were more important to promotion than the leadership skills and territorial familiarity that Defendants prioritized in their promotion decisions. For example, while Plaintiff may have had superior polygraph skills, worked on a larger variety of cases, and done more undercover work that those promoted over her, (P's Opp. at 9-12), none of these attributes were

---

failure to object on hearsay grounds) suffice to create a dispute of fact as to whether Defendants did or did not get any recommendation of Plaintiff from a supervisor, it is insufficiently probative on its own to create an inference of discrimination given Plaintiff's lack of evidence of discriminatory animus. *See James*, 233 F.3d at 155 n.1; *Luo*, 2024 WL 4444283, at *10.

29

highlighted as requirements – or even preferences – for appointment to Senior Investigator, (*see* ECF No. 79-3 at 3-4).  Conversely, "qualities of leadership" are explicitly required.  (*Id.* at 3.) And while Plaintiff may disagree with Defendants' assessment that the candidates promoted over her demonstrated superior leadership capabilities, "[t]he Court does not sit as a super-personnel department that reexamines an entity's business decisions," and "Plaintiff's subjective disagreement with the way Defendant weighed h[er] and the other applicants' qualifications does not create an issue of material fact."  *Brophy*, 2020 WL 4040742, at *13; *see Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 125 (2d Cir. 2012) (summary order) ("[D]efendants demonstrated that the reason [Plaintiff] was not promoted . . . , despite having technical qualifications for the position, was that the position required strong communications, interpersonal, and leadership skills, and that the candidate who was promoted possessed these attributes while, in the judgment of his employers, [Plaintiff] did not.  We do not second-guess h[er] employer's decision in this regard, provided that it was not based on discrimination."); *Shipkevich v. N.Y. Presbyterian Hosp./Columbia Univ. Med. Ctr.*, No. 16-CV-9630, 2020 WL 6561802, at *17 (S.D.N.Y. July 22, 2020) ("[E]mployers enjoy unfettered discretion to choose among qualified candidates and to decide what type of credentials are of the most importance for a particular job, and courts defer to employers to select what criteria are important to them when evaluating the issue of pretext."), *report and recommendation adopted sub nom. Shipkevich v. N.Y. & Presbyterian Hosp.*, 2020 WL 5796202 (S.D.N.Y. Sept. 29, 2020); *see also Fleming*, 371 F. App'x at 118 ("Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual.").

Plaintiff also points out that each white male promoted in her stead had a history of discipline, workplace errors or other weaknesses.  But "[t]hat some of the candidates had

blemishes on their record or that [Plaintiff] feels that the selection process should have produced a different result does not show the falsity of the proffered nondiscriminatory reason for the promotion decisions." *Kearney v. Cnty. of Rockland ex rel. Vanderhoef*, 185 F. App'x 68, 69-70 (2d Cir. 2006) (summary order); *see Wall v. Town of Niskayuna*, No. 07-CV-350, 2009 WL 290454, at *10 (N.D.N.Y. Feb. 5, 2009) (plaintiff could not defeat summary judgment by arguing that candidate promoted over her had a "horrendous disciplinary record" and ignoring the role that leadership style played in promotion decision).  Plaintiff has thus failed to show that she was more qualified for the position of Senior Investigator than those promoted over her, let alone that her qualifications were "so superior . . . that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Szewczyk*, 2022 WL 2037196, at *2.

Finally, Plaintiff presents a laundry list of unpleasant workplace incidents and conclusorily states that no white males were so treated.  For example, she cites instances where she did not receive a commendation for successful work on a case, and then lists instances where male employees were commended.  (P's Decl. ¶¶ 24, 2627, 32.)  But Plaintiff's bald allegations that these white males were "similarly situated," (*id.* ¶ 27), are insufficient to create a genuine dispute of fact, *see Rosinski v. Am. Axle & Mfg., Inc.*, 663 F. Supp. 2d 197, 204 (W.D.N.Y. 2009) ("Conclusory statements that 'similarly situated' employees outside the protected class were treated more favorably are not sufficient to defeat summary judgment."), *aff'd*, 402 F. App'x 535 (2d Cir. 2010) (summary order).[15]  Plaintiff's other complaints bear an even weaker nexus to her

---

[15] Plaintiff does point to an incident in which two male officers were commended for their work on a case on which she had also worked, (P's Decl. ¶ 32), but she does not specify what the two male officers' involvement was or the conduct for which they had been commended, nor does she establish that her role in the case was similar.  Further, while Plaintiff states in her Counterstatement that "[m]ale officers' files are replete with commendation letters

31

protected characteristics: she essentially describes an incident and then states that it had not happened to a white male, without any effort to show that any white male was similarly situated. (*See, e.g.*, P's Decl. ¶ 25 (order that Plaintiff stop working on case was "highly unusual"); *id.* ¶ 28 ("Defendant Browne had never taken a case away from a white male investigator and assigned it to a female."); *id.* ¶ 33 (Kolek did not require any other squad member to write a memo justifying overtime); *id.* ¶ 35 ("Defendant Browne did not similarly question the disposition and temperament of white male officers or refer them to [employee assistance] because they were not smiling or friendly.").) But "[a]llegations of unfair treatment directed at a member of a protected class do not establish a claim absent a basis to conclude that unfair treatment arose because of the victim's membership in that class." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 106 (S.D.N.Y. 2023); *see Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002) (plaintiff "has done little more than cite to [her] alleged mistreatment and ask the court to conclude that it must have been related to [her] race."); *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812, 2015 WL 1499618, at *42 (S.D.N.Y. Mar. 27, 2015) ("fallacy" for plaintiff to say: "I belong to a protected class; something bad happened to me at work; therefore, it must have occurred because I belong to a protected class"), *aff'd*, 693 F. App'x 41 (2d Cir. 2017) (summary order). Thus, because Plaintiff has failed to present sufficient evidence that Defendants' failure to promote her had anything to do with her gender or national origin – let alone that these protected characteristics were a but-for cause of her non-

---

for similar work," (ECF No. 87 at 24-40 ("P's Counterstatement") ¶ 53), the exhibit cited is unrelated to the stated proposition, (*see* ECF No. 85-22).

32

promotion, as required for § 1983 claims, *see Naumovski*, 934 F.3d at 214 – Defendants' motion is granted.[16]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 72), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated: January 12, 2026
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[16] Defendants also argue that they are entitled to qualified immunity.  (Ds' Mem. at 25.) Because Plaintiff's claims fail on the merits, the Court need not address this argument.  *See Grace v. Alvarado*, No. 21-CV-3578, 2024 WL 1859851, at *8 n.3 (S.D.N.Y. Apr. 29, 2024); *Close v. Bedford Cent. Sch. Dist.*, No. 23-CV-4595, 2024 WL 3427213, at *14 n.23 (S.D.N.Y. July 16, 2024).